# EXHIBIT "A"



# Prime Property & Casualty Insurance Inc.
## Declarations
### Page 1 of 2

THIS COMMERCIAL AUTO INSURANCE POLICY (the "Policy") is strictly limited to those activities and operations defined herein. Coverage is provided only for scheduled autos and drivers.

| | |
|---|---|
| Policy Number: PC19011569 | Customer Number: D18-201664 |

**Policy Period:** From Effective Date: 1/23/2019   To Expiration Date: 1/23/2020   Retroactive Date: 1/23/2019
(All dates (12:01 a.m.) of the physical address of the Insured.)

| Name and Physical Address of the Insured: | Mailing Address: |
|---|---|
| Kepail Group, Inc | Same |
| 4670 Forest Hill Blvd. | |
| West Palm Beach, FL 33415 | |

**Policy Premium:**

Premium: ▬▬▬▬▬

Insurer Inspection/Policy Fee: ▬▬▬▬

Total: ▬▬▬▬▬

**30 % Premium Earned at Inception**

Description of coverage afforded hereunder:   Commercial Auto - FL

Endorsements and forms afforded to this policy:   ACA-99-03, ACA-99-04, CA 00 01 10 13, IL 00 17 11 98, CA 23 84 10 13, IL 00 21 09 08, CA 03 02 10 13, CA 01 28 02 16, CA 02 67 06 16, CA 20 28 06 16, CA21720617, CA21021106, CA22100218

**Producer:**
Brown & Brown - Homestead
1780 N Krome Avenue
Homestead, FL 33030

**Issuing Office:**
Prime Property & Casualty Insurance Inc.
8722 S. Harrison St.
Sandy, UT 84070    Phone: 800-257-5590

**Address Notice of Claims/Complaints to:**
Claims Direct Access (CDA)
8722 S. Harrison St.
Sandy, UT 84070

**Service of Suit may be made upon :**
Jeffery P. Leman
8722 S. Harrison St.
Sandy, UT 84070



**Prime Property & Casualty Insurance Inc.**
**Declarations**
Page 2 of 2

| Commercial Auto | | |
|---|---|---|
| $500,000 | Combined Single Limit (CSL) | |
| $2,500 | Liability Deductible | |
| $5,000 | Property Damage Clean Up Cost Sublimit | |

| | |
|---|---|
| $10,000 | UM Per Person |
| $20,000 | UM Per Accident |
| $10,000 | PIP Per Person |

Number of Vehicles: 11    Number of Drivers: 14
Item 2: 7, 8, 9

Coverages:
Non-Owned Auto - Scheduled Driver
Hired Auto - Scheduled Auto

Issuing Date:    1/28/2019

Authorized Representative

## SCHEDULED DRIVERS ENDORSEMENT
### ACA-99-03

CARRIER:                    Prime Property & Casualty Insurance Inc.
                            8722 South Harrison St.
                            Sandy, UT 84070.

POLICY NUMBER:              PC19011569

INSURED NAME AND ADDRESS:   Kepali Group, Inc
                            4670 Forest Hill Blvd
                            West Palm Beach, FL 33415

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

The Insured hereby warrants that each and every person scheduled on this Policy below is over the age of 21 and under the age of 65, unless otherwise authorized by an underwriter and scheduled on the Policy.

New drivers and operators will not be added to this Policy until the insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer.  Acceptance by the Insurer is subject to underwriting approval and may require additional premium.

### Named Driver or Operator Listing

| No. | Name | D.O.B. | License Number | State | Notes |
|---|---|---|---|---|---|
| 1 | Ihosvany Marchena | 72 | 2560 | FL | |
| 2 | Miguel Macario Gonzalez | 48 | 4490 | FL | |
| 3 | Elias Anibal Monroy | 75 | 2600 | FL | |
| 4 | Nelson Ramio Machena | 79 | 0990 | FL | |
| 5 | Jose Liberado Figueredo Marchena | 53 | 2990 | FL | |
| 6 | Juan G Herrera | 53 | 640 | FL | |
| 7 | Miguel Angel Parente Rodriguez | 73 | 1450 | FL | |
| 8 | Eugenio Diaz Sotolongo | 70 | 2520 | FL | |
| 9 | Eladio Enrique Cabrera | 73 | 2160 | FL | |
| 10 | Javier Raul Garriga | 78 | 0460 | FL | |
| 11 | Adrian De La Cruz | 79 | -254-0 | FL | |
| 12 | Humberto Teijeira Caceres | 71 | -302-0 | FL | |
| 13 | Ruben Marrero Cancio | 93 | -292-0 | FL | |
| 14 | Engels Cambara Espallarga | 82 | 3620 | FL | |

SPECIFICALLY DESCRIBED AUTOS – ITEM THREE OF THE DECLARATIONS

ACA-99-04

| Unit No. | Year | Make | Model | Vehicle Identification Number (VIN) | Medallion | Garage City, State | Radius | Liability | Value | Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2007 | Toyota | Sienna | 5TDZK23C57S013739 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 2 | 2009 | Toyota | Sienna | 5TDZK23C89S250079 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 3 | 2008 | Toyota | Sienna | 5TDZK23C38S118085 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 4 | 2012 | Nissan | Quest | JN8AE2KP3C9035020 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 5 | 2014 | Mercedes | Sprinter | WD2PE7DC8E5847081 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 6 | 2014 | Mercedes | Sprinter | WD2PE7DC4E5909592 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 7 | 2014 | Mercedes | Sprinter | WD2PE7DC1E5937723 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 8 | 2015 | Mercedes | Sprinter | WD2PE7DC5FP166415 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 9 | 2015 | Mercedes | Sprinter | WD2PE7DC3FP145028 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 10 | 2015 | Toyota | Sienna | 5TDKK3DC7FS587876 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 11 | 2016 | Mercedes | Sprinter | WD2PE7DD6GP191852 | None | West Palm Beach, FL | Up to 50 Miles | ☑ | | 01/23/2019 |
| 12 | 2019 | Hired | Auto | | None | West Palm Beach, FL | Up to 50 Miles | ☑ | $0.00 | 01/23/2019 |
| 13 | 2019 | Non-Owned | Auto | | None | West Palm Beach, FL | Up to 50 Miles | ☑ | $0.00 | 01/23/2019 |

All Autos are required to pass an annual safety inspection performed by an independent service garage in order to be a covered Auto, which must be available at the request of the Insurer.

Any non-owned trailers scheduled on this endorsement must be attached to a scheduled power unit for coverage to apply.

ACA-99-04 17OCT2018

Page 1 of 1

COMMERCIAL AUTO
CA 00 01 10 13



**PRIME**

**PROPERTY & CASUALTY**

**INSURANCE INC.**

# BUSINESS AUTO COVERAGE FORM

**A Capital Stock Company**

**Chicago, Illinois 60606**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

   © Insurance Services Office, Inc., 2011   CA 00 01 10 13

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

   © Insurance Services Office, Inc., 2011   CA 00 01 10 13

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

   **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   **(1)** When all of the work called for in your contract has been completed;

   **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 © Insurance Services Office, Inc., 2011

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is;

   **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

© Insurance Services Office, Inc., 2011

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

     **(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

     **(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

  **2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

  **3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

  **1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

  **a.** Pay its chosen appraiser; and

  **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

  **2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

  **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

     **(1)** How, when and where the "accident" or "loss" occurred;

     **(2)** The "insured's" name and address; and

     **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

  **b.** Additionally, you and any other involved "insured" must:

     **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

     **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

     **(4)** Authorize us to obtain medical records or other pertinent information.

     **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

  **c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

     **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

     **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

     **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

     **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

  **3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

  **a.** There has been full compliance with all the terms of this Coverage Form; and

  **b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **Loss Payment – Physical Damage Coverages**

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

© Insurance Services Office, Inc., 2011   CA 00 01 10 13

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

COMMERCIAL AUTO
CA 23 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

  1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    b. When one or both of the following apply:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

  2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

© Insurance Services Office, Inc., 2013

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

© Insurance Services Office, Inc., 2013
CA 23 84 10 13

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08   ☐

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 03 02 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

Covered Autos Liability Coverage and Paragraph **A.** Bodily Injury And Property Damage Liability of Section II – General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| **Liability Deductible:** | $ | **Per "Accident"** |
|---|---|---|
| **OR** | | |
| **"Property Damage" Only Liability Deductible:** | $ | **Per "Accident"** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Liability Deductible**

If a Liability Deductible, and not a "Property Damage" Only Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable will be reduced by the Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**B. Property Damage Only Liability Deductible**

If a "Property Damage" Only Liability Deductible, and not a Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable for "property damage" will be reduced by the "Property Damage" Only Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**C. Our Right To Reimbursement**

To settle any claim or "suit", we will pay all or any part of any deductible shown in the Schedule. You must reimburse us for the deductible or the part of the deductible we paid.

CA 03 02 10 13          © Insurance Services Office, Inc., 2011          Page 1 of 1

COMMERCIAL AUTO
CA 01 28 02 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Liability Coverage** is changed as follows:

Paragraph **(5)** of **a. Supplementary Payments** under **Coverage Extensions** in the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms is replaced by the following:

We will pay for the "insured":

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**B. Physical Damage Coverage** is changed as follows:

**1.** No deductible applies under Specified Causes Of Loss or Comprehensive Coverage for "loss" to glass used in the windshield.

**2.** All other **Physical Damage Coverage** provisions will apply.

**C.** Paragraph **1.** of **Loss Conditions, Appraisal For Physical Damage Loss**, is replaced by the following:

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

© Insurance Services Office, Inc., 2015

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**D.** The **General Conditions** are amended as follows:

**1.** The following is added to the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Truckers and Motor Carrier Coverage Forms:

    **a.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

        **(1)** One provides coverage to a lessor of "autos" for rent or lease; and

        **(2)** The other provides coverage to a person not described in Paragraph **D.1.a.(1)**;

    then the Coverage Form or policy issued to the lessor described in Paragraph **D.1.a.(1)** is excess over any insurance available to a person described in **D.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

        The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

**2.** The following condition is added to the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms:

**Mediation**

**1.** In any claim filed by an "insured" with us for:

    **a.** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

    **b.** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

    **c.** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**2.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**3.** The request must state:

    **a.** Why mediation is being requested.

    **b.** The issues in dispute, which are to be mediated.

**4.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**5.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**6.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

© Insurance Services Office, Inc., 2015

CA 01 28 02 16

COMMERCIAL AUTO
CA 02 67 06 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraphs **A.2.** and **A.3.** of the Common Policy Conditions, **Cancellation,** are replaced by the following:

  **2.** We may cancel this policy by mailing or delivering to the Named Insured written notice of cancellation, stating the reason(s) for cancellation, at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 45 days before the effective date of cancellation if we cancel for any other reason.

  **3.** We will mail or deliver our notice to the Named Insured's last mailing address known to us.

**B.** Paragraphs **A.4.** and **A.5.** of the Common Policy Conditions, **Cancellation,** are replaced by the following:

  **4.** Notice of cancellation will state the effective date of, and reason(s) for, the cancellation. The policy period will end on that date.

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

  **7.** If this policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

   **a.** It is a new or renewal policy, it may not be cancelled by the first Named Insured during the first 60 days immediately following the effective date of the policy or renewal, except for one of the following reasons:

    **(1)** The covered "auto" is completely destroyed such that it is no longer operable;

    **(2)** Ownership of the covered "auto" is transferred; or

    **(3)** The Named Insured has purchased another policy covering the motor vehicle insured under this policy.

CA 02 67 06 16                    © Insurance Services Office, Inc., 2015                    **Page 1 of 2**

     **b.** It is a new policy, we may not cancel it during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

**D.** The following condition is added:

**Nonrenewal**

     **1.** If we decide not to renew or continue this policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

     **2.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

     **3.** Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

© Insurance Services Office, Inc., 2015                **CA 02 67 06 16**

COMMERCIAL AUTO
CA 20 28 06 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA – EMERGENCY SERVICES – VOLUNTEER FIREFIGHTERS' AND WORKERS' INJURIES EXCLUDED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Liability Coverage** is changed by adding the following exclusions:

This insurance does not apply to:

1. "Bodily injury" to any volunteer firefighter or other volunteer worker of the "insured" if sustained while such person is engaged in volunteer firefighting, rescue squad or ambulance corps operations.

This exclusion applies only if you provide or are required to provide benefits for the worker under any workers' compensation or disability benefits law or under any similar law.

2. "Bodily injury" to any fellow volunteer firefighter or other volunteer worker of the "insured" if sustained in the course of volunteer firefighting, rescue squad or ambulance corps operations.

© Insurance Services Office, Inc., 2015

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 72 06 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance:  $** | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

  **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

  **2.** With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

    **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

    **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such tentative settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

  **3.** Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

  If the Named Insured is designated in the Declarations as:

  **1.** An individual, then the following are "insureds":

    **a.** The Named Insured and any "family members".

© Insurance Services Office, Inc., 2016

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to:

1. Any claim settled or judgment reached without our consent, unless our right to recover payment has not been prejudiced by such settlement or judgment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of an "uninsured motor vehicle".

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by a vehicle owned by that individual Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other coverage form or policy; or

d. Any "insured" with respect to damages for pain, suffering, mental anguish or inconvenience unless the "bodily injury" consists in whole or in part of:

(1) Significant and permanent loss of an important bodily function;

(2) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

(3) Significant and permanent scarring or disfigurement; or

(4) Death.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability Coverage form, No-fault Coverage endorsement, Medical Payments Coverage endorsement, or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

3. We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

4. We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

© Insurance Services Office, Inc., 2016

CA 21 72 06 17

## E. Changes In Conditions

The Conditions are changed for Uninsured Motorists Coverage Nonstacked as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   a. If there is other applicable insurance available under one or more coverage forms, policies or provisions of coverage, any recovery for damages sustained by an individual Named Insured or any "family member":

   (1) While "occupying" a vehicle owned by that Named Insured or any "family member" may equal, but not exceed, the limit of insurance for Uninsured Motorists Coverage applicable to that vehicle.

   (2) While "occupying" a vehicle not owned by that Named Insured or any "family member" may equal, but not exceed, the sum of:

   (a) The limit of insurance for Uninsured Motorists Coverage applicable to the vehicle such Named Insured or any "family member" was "occupying" at the time of the "accident"; and

   (b) The highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to such Named Insured or any "family member".

   (3) While not "occupying" any vehicle may equal, but not exceed, the highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to an individual Named Insured or any "family member".

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this coverage form is provided:

   (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

   c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle"; and

 © Insurance Services Office, Inc., 2016

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4.** The following condition is added:

**a. Arbitration**

**(1)** If we and an "insured" do not agree:

**(a)** Whether that person is legally entitled to recover damages under this endorsement; or

**(b)** As to the amount of damages that are recoverable by that person;

then the matter may be mediated, in accordance with the Mediation Provision contained in General Conditions, if the damages resulting from "bodily injury" are for $10,000 or less, or arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**(2)** Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**(3)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**b. Florida Arbitration Act**

If we and an "insured" agree to arbitration, the **Florida Arbitration Act** will not apply.

**c. Mediation**

**(1)** In any claim filed by an "insured" with us for:

**(a)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(b)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(c)** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**(2)** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**(3)** The request must state:

**(a)** Why mediation is being requested.

**(b)** The issues in dispute, which are to be mediated.

**(4)** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**(5)** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

© Insurance Services Office, Inc., 2016   CA 21 72 06 17

(6) The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy applies at the time of an "accident";

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident" but the amount paid under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident";

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. For which neither the driver nor owner can be identified. The land motor vehicle or "trailer" must:

      (1) Hit an individual Named Insured or any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying"; or

      (2) Cause an "accident" resulting in "bodily injury" to an individual Named Insured or any "family member" without hitting that Named Insured, any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying".

   If there is no physical contact with the land motor vehicle or "trailer", the facts of the "accident" must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

   However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned by a governmental unit or agency;

   b. Designed for use mainly off public roads while not on public roads; or

   c. Owned by or furnished or available for the regular use of the Named Insured, or if the Named Insured is an individual, any "family member" unless it is a covered "auto" to which the coverage form's Liability Coverage applies and liability coverage is excluded for any person or organization other than the Named Insured, or if the Named Insured is an individual, any "family member".

 © Insurance Services Office, Inc., 2016

POLICY NUMBER:

COMMERCIAL AUTO
CA 21 02 11 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPLIT BODILY INJURY UNINSURED MOTORISTS COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| :--- |
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Liability | | |
| :--- | :--- | :--- |
| "Bodily Injury":   $ | | Each Person |
| $ | | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Paragraph 1. of the **Limit Of Insurance** provision in the Uninsured Motorists Coverage endorsement applicable to "bodily injury" is replaced by the following:

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the limit of insurance is as follows:

    a. The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident", including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "Bodily Injury" shown in the Schedule for each person.

    b. Subject to the limit for each person, the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit of "Bodily Injury" shown in the Schedule for each "accident".

© ISO Properties, Inc., 2006

POLICY NUMBER:

COMMERCIAL AUTO
CA 22 10 02 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows that:

## SCHEDULE

| |
|---|
| Any Personal Injury Protection deductible shown in the Declarations of   $ |
| is applicable to    ☐   the following "named insured" only; |
|           ☐   each "named insured" and each dependent "family member"; |
| ☐   Work loss for "named insured" does not apply. |
| ☐   Work loss for "named insured" and dependent "family member" does not apply. |

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | subject to the total aggregate limit |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

CA 22 10 02 18            © Insurance Services Office, Inc., 2017            **Page 1 of 8**

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

### 1. Medical Expenses

a. All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

(1) Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

(2) Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

(3) Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

b. Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1)**, **(2)** or **(3)**, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.**, if provided, supervised, ordered or prescribed only by a licensed:

(1) Physician, osteopathic physician, chiropractic physician or dentist; or

(2) Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician, chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

(3) A licensed hospital or ambulatory surgical center;

(4) An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(5) An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(6) A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b.**; or

(7) A health care clinic licensed under the Florida Health Care Clinic Act:

(a) Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

(b) Which:

(i) Has a licensed medical director;

(ii) Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(iii) Provides at least four of the following medical specialties:

I. General medicine;

II. Radiography;

III. Orthopedic medicine;

IV. Physical medicine;

V. Physical therapy;

VI. Physical rehabilitation;

VII. Prescribing or dispensing outpatient prescription medication; or

VIII. Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.**, medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

© Insurance Services Office, Inc., 2017

CA 22 10 02 18

**2. Replacement Services Expenses**

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

**3. Work Loss**

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

**4. Death Benefits**

**B. Who Is An Insured**

**1.** The "named insured".

**2.** If the "named insured" is an individual, any "family member".

**3.** Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

**4.** A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

**1.** Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

**2.** Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

**3.** Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

    **a.** Causing "bodily injury" to himself or herself intentionally; or

    **b.** While committing a felony;

**4.** To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

**5.** To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

**6.** To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

**7.** To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

**8.** To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

**1.** Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this Policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

    **a.** $10,000 for medical expenses, work loss and replacement services; and

    **b.** $5,000 for death benefits.

**2.** Subject to Paragraph **D.1.a.**, we will pay:

    **a.** Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

    **b.** Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".

**3.** Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense, benefits available under this Policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1., A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses shall be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   Compliance with the following duties is a condition precedent to receiving benefits:

   In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

   If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

   A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No legal action may be brought against us until there has been full compliance with all terms of this Policy. In addition, no legal action may be brought against us:

      (1) Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

      (2) Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

      (3) With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

         (a) Pay the overdue claim; or

         (b) Agree to pay for future treatment not yet rendered;

         in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

   b. If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

© Insurance Services Office, Inc., 2017          CA 22 10 02 18

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

   a. We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

   b. If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

   c. The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

   **Policy Period, Coverage Territory**

   The insurance under this section applies only to "accidents" which occur during the policy period:

   a. In the state of Florida;

   b. As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

   c. As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

## F. Additional Conditions

The following conditions are added:

### 1. Mediation

a. In any claim filed by an "insured" with us for:

  (1) "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

  (2) "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

  (3) "Loss" to a covered "auto" or its equipment, in any amount,

either party may make a written demand for mediation of the claim prior to the institution of litigation.

b. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

c. The request must state:

  (1) Why mediation is being requested.

  (2) The issues in dispute, which are to be mediated.

d. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

e. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

f. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

### 2. Payment Of Benefits

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

### 3. Modification Of Policy Coverages

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the Policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the Policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

© Insurance Services Office, Inc., 2017

CA 22 10 02 18

**4. Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**5. Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this Policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**7. Insured's Right To Personal Injury Protection Information**

a. In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

b. If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

1. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a. Serious jeopardy to "insured's" health;

b. Serious impairment to bodily functions; or

c. Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

However, "motor vehicle" does not include:

   **a.** A mobile home;

   **b.** Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the Policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

   **a.** A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   **b.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   **c.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   **a.** In accordance with generally accepted standards of medical practice;

   **b.** Clinically appropriate in terms of type, frequency, extent, site and duration; and

   **c.** Not primarily for the convenience of the patient, physician or other health care provider.

© Insurance Services Office, Inc., 2017

CA 22 10 02 18