UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-81787-DIMITROULEAS/MATTHEWMAN

PRIME PROPERTY AND CASUALTY
INSURANCE COMPANY,

Plaintiff,

v.

KEPALI GROUP, INC., et al.,

Defendants.
_______________________________________/

**MAGISTRATE JUDGE'S OMNIBUS REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES [DE 219; DE 225]**

THIS CAUSE is before the Court upon Defendants Kepali Group, Inc. and Yordani Oliva Rodriguez's ("Defendants") Amended Motion for Attorneys' Fees ("Motion for Appellate Fees") [DE 219] and Defendants' Verified Renewed Motion for Entry of Final Judgment Awarding Defendant Kepali Attorney Fees and Costs ("Motion for Fees and Costs") [DE 225], collectively the ("Motions"). Both Motions were referred to the Undersigned Chief United States Magistrate Judge by the Honorable William P. Dimitrouleas, United States District Judge. [DEs 222, 226]. The Motions are fully briefed. *See* DEs 219, 229, 232. Thus, the matters are ripe for review.

## I. BACKGROUND

On September 21, 2021, Plaintiff Prime Property and Casualty Insurance Company ("Prime" or "Plaintiff") filed a Complaint for Declaratory Relief against Kepali Group, Inc. ("Kepali"), Yordani Oliva Rodriguez ("Rodriguez"), Jacqueline Roney, and Jackerline Rose Roney. [DE 1]. Specifically, Prime sought declaratory relief from the Court that a 2009 Toyota involved in an automobile accident—driven by Rodriguez and owned by Kepali—was not a

scheduled auto under the commercial automobile policy between Kepali and Prime. Stated differently, Prime sought a declaration from the Court that it did "not have a duty to defend and therefore no duty to indemnify Kepali and Rodriguez for the claims made by Jacqueline Roney and Jackerline Roney against them arising out of the [automobile a]ccident." [DE 1 at 7–8].

Subsequently, Defendants filed a "Second Amended Answer, Affirmative Defenses, Counter Claims and Cross Claims" [DE 74]. With respect to the Counterclaims, Defendants sought declaratory relief as to the parties' duties, liabilities and legal obligations under the insurance policy (Count I); reformation against Prime (Count II); promissory estoppel against Prime (Count III); breach of fiduciary duty against Prime (Count IV); and negligent misrepresentation against Prime (Count V). As to the Crossclaims, Defendants claimed a breach of fiduciary duty and negligent misrepresentation against Brown & Brown of Florida Inc. ("Brown") and Norman L. Morris ("Morris") (Counts VI and VII, respectively).[1]

Eventually, Brown and Morris filed a Motion for Summary Judgment [DE 108], Prime filed an Amended Motion for Final Summary Judgment [DE 120], and Defendants filed an Amended Motion for Partial Summary Judgment [DE 121]. Thereafter, in a July 5, 2023 Omnibus Order [DE 184], the Court denied Brown and Morris' Motion for Summary Judgment, granted in part and denied in part Prime's Motion for Summary Judgment, and granted in part, denied in part, and denied as moot in part Defendants' Motion for Partial Summary Judgment.

Specifically, the Court found that "Brown was Kepali's agent and not Prime's agent with respect to Brown's actions and representations as they relate to the 3985 Toyota," and therefore granted Prime's request for summary judgment on Counterclaim Count I regarding the issue of agency. [DE 184 at 20]. The Court also: (1) found that the 3985 Toyota was a covered automobile

[1] Defendants represented that Counts VI and VII were abated pending resolution of the non-abated claims. [DE 74 at 21–22].

at the time of the accident, and therefore denied Prime's request for summary judgment and granted Defendants' request for summary judgment on Count I "regarding the duty to defend Kepali and Rodriguez for the underlying action;" (2) denied Defendants' request for summary judgment and granted Prime's request for summary judgment on Counterclaim Count II for reformation of the Policy; (3) granted Prime's request for summary judgment as to Counterclaim Count III for promissory estoppel; (4) dismissed as moot Defendants' alternative claims (that is, Counterclaim Counts IV and V); and (5) dismissed as moot Defendants' crossclaims (Counterclaim Counts VI and VII). *Id.* at 24–29.

Importantly, the Court found that Prime had a duty to defend its insured in the underlying state court action. *Id.* at 29. However, the Court stayed the case "as to the issue of indemnification on the basis that the issue is premature until the underlying action has concluded." *Id.* at 28. Moreover, the Court stated that it would not rule on the issue of entitlement to attorneys' fees or costs but would "retain jurisdiction to consider any motion(s) for attorneys' fees and costs filed in accordance with the Local Rules." *Id.* at 29.

On July 27, 2023, Prime filed a Motion for Reconsideration. [DE 185]. While the Motion for Reconsideration remained pending, Prime nonetheless filed a Notice of Appeal [DE 186]. Defendants, in turn, filed a cross-appeal. [DE 193]. The Court then denied Prime's Motion for Reconsideration on November 15, 2023. [DE 205].

On September 5, 2023, Defendants filed a Verified Motion for Judgment Awarding Attorneys' Fees and Costs. [DE 199]. The Court denied Defendants' Verified Motion for Judgment Awarding Attorneys' Fees and Costs without prejudice and stated that "Defendants may file a Renewed Verified Motion for Judgment Awarding Attorneys' Fees and Costs once the issue of indemnification is resolved in this case and a final judgment has been entered." [DE 210 at 15].

On June 3, 2025, the Eleventh Circuit affirmed the Court's ruling on summary judgment "that Prime has a duty to defend Kepali and [] Rodriguez in the underlying state court action." [DE 217 at 22]. Defendants then moved for appellate attorneys' fees by filing the Motion for Appellate Fees, which the Eleventh Circuit transferred to this Court. [DE 219]. Defendants also renewed their request for attorneys' fees and costs for "prevailing in Prime's lawsuit and appeal" in their Motion for Fees and Costs. [DE 225]. Thus, now pending before the Court are the Motions. [DEs 219, 225].

## II. LEGAL STANDARD

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted). However, the Court may also use its own experience in assessing the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id*. (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become

green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## III. ATTORNEYS' FEES

Defendants seek $772,829 in total attorneys' fees.[2] *See* DEs 225, 219.[3] Defendants maintain that they are entitled to attorneys' fees under section 627.428, Florida Statutes (2019).[4] [DE 225 at 1; DE 219 at 8–12]. Defendants also aver that the requested amount of attorneys' fees is reasonable. [DE 199[5]; DE 219 at 12–16].

In response, Plaintiff does not dispute that Defendants are entitled to recover fees. [DE 229 at 9–10; DE 219 at 39]. However, Plaintiff argues that Defendants are not entitled to attorneys' fees incurred in pursuing Defendants' unsuccessful cross-appeal and related jurisdictional issues, litigating failed counterclaims, correcting noncompliance with court rules, and litigating fees when Plaintiff conceded entitlement. [DE 219 at 39; DE 229 at 13–17]. Independently, Plaintiff contends that Defendants fail to meet their burden of showing the reasonableness of the amount requested because Defendants did not obtain an independent expert for the Motion for Appellate Fees as required under Florida law. [DE 219 at 40–41]. Lastly, Plaintiff maintains that any award should

---

[2] Defendants' briefing regarding the Motion for Fees and Costs [DE 225] lumps all of Defendants' requested fees together, instead of separating out the fees incurred for the appeal. Therefore, the Court analyzes the Motion for Fees and Costs and Motion for Appellate Fees together, as the Court cannot parse the billing records as presented by Defendants.

[3] For the Motion for Appellate Fees, the Court cites the docket entry page numbers found on the top right corner of Docket Entry 219.

[4] Defendants also cite Florida's "wrongful act doctrine" as a basis for attorneys' fees and costs. *See* DE 225. However, they provide no additional discussion as to why this is a proper basis for attorneys' fees and costs. Further, the Eleventh Circuit has questioned "how well-established the doctrine is in Florida." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1261 (11th Cir. 2014). Accordingly, the Court operates under section 627.428.

[5] Defendants renew their prior motion for attorneys' fees and costs [DE 199], so the Court has also reviewed and cites to this briefing.

be reduced due to the following: (1) certain attorneys charged unreasonable rates; and (2) the number of hours billed is excessive and contains duplicative entries, internal conferences, clerical tasks, vague and block-billed entries, and unrelated time. [DE 219 at 47–52; DE 229 at 18–20].

In reply, Defendants contend that their cross-appeal and counterclaims were inextricably intertwined with Plaintiff's appeal and Defendants' successful claims. [DE 219 at 87–88; DE 232 at 5–6; DE 208 at 4–6]. Defendants also maintain that an independent expert review is not required under federal law, which governs pleading for attorneys' fees. [DE 219 at 88–89]. Finally, Defendants reiterate that their rates and time billed are reasonable. [DE 219 at 89–94; DE 208 at 7–10].

Initially, the Court finds that Defendants are entitled to seek appellate attorneys' fees under section 627.428, Florida Statutes (2019), and Plaintiff does not dispute such entitlement. Therefore, the Court will proceed to Plaintiff's arguments as to the amount of a reasonable fee.

## I. Independent Fee Expert

First, Defendants are not barred from recovering appellate attorneys' fees because they did not obtain an independent expert to review their billing records. The Court recognizes that expert testimony regarding the reasonableness of the attorneys' fees is generally required under Florida law. *Cohen v. Cohen*, 414 So. 3d 244, 246 (Fla. 4th DCA 2025). However, "[a]lthough the right to attorney's fees is substantive, the manner for claiming the award is procedural." *Allstate Fire & Cas. Co. v. Ho*, No. 11-60724-CIV, 2013 WL 12086659, at *2 (S.D. Fla. June 18, 2013) (Altonaga, J.). Thus, federal law controls. And, under federal law, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either *with or without the aid of witnesses* as to value." *Norman*, 836 F.2d at 1303 (emphasis added). Accordingly, an appellate fee award is not

inappropriate solely because Defendants did not retain an independent expert.

## II. Reasonable Hourly Rate

Plaintiff only challenges the hourly rates of Ms. van den Berg and Ms. David. [DE 219 at 43–47; DE 229 at 10–12]. Therefore, the Court will award Attorney Keith A. Graham and Attorney Marcos R. Marchena the hourly rates of $450 and finds that the rates are reasonable. *See* DE 225 at 8–9.

Attorney Ann E. van den Berg is claiming an hourly rate of $350 until June 23, 2022, and $450 to date. [DE 225 at 8–9; DE 219 at 26]. Ms. van de Berg has practiced for twelve years, and her experience includes "corporate law, business transactions, governmental entities, airport law, municipal bonds, wills and trusts." [DE 219 at 15]. Attorney Valerie C. David is claiming an hourly rate of $350. *Id.* at 27. Ms. David has been practicing for three years, and her practice includes "trial business litigation." *Id.* at 15. Plaintiff maintains that Ms. van de Berg's rate should be reduced to $300 per hour due to her lack of litigation and appellate experience, comparing her to a junior associate. [DE 219 at 44; DE 229 at 11]. Plaintiff also notes that Defendants' prior fee expert in this Court found that $366 is a reasonable hourly rate for Ms. van de Berg. [DE 219 at 45; DE 229 at 11]. Plaintiff argues that Ms. David's rate should be reduced to $300. [DE 219 at 44; DE 229 at 11–12]. Plaintiff again contends that Ms. David has "no apparent experience litigating insurance cases or handling appeals." [DE 219 at 44]. Plaintiff surmises that a $300 rate accounts for this suit being an insurance coverage case, justifying a lower rate, and counsel's lack of experience in similar matters. [DE 219 at 45–47; DE 229 at 11–12].

The Court finds that Defendants have not met their burden of justifying the above rates. Relying on the *Johnson* factors and the Court's own knowledge and experience, a $350 rate for Ms. van de Berg and a $300 rate for Ms. David are more appropriate. First, Ms. van de Berg's lack

of experience in appellate and litigation matters is evident from the billing records. For example, Ms. van de Berg billed for "researching Federal Rules of Appellate Procedure for appeal; research 11th Circuit Rules; discuss certification of interested persons cross-appeal with attorney Graham[,]" "researching format of Reply Brief[,]" and for reviewing the Federal Rules of Appellate Procedure "for type face and font size requirements[.]" [DE 219 at 28–29]. Second, the requested rates are higher than rates awarded for similar matters in this district. *See Landfall 2, Inc. v. Datascore-Ai, LLC*, No. 22-CV-80801, 2023 WL 1979533, at *4 (S.D. Fla. Feb. 8, 2023) (reducing attorney hourly rate for attorney with 11 years of experience from $450.00 to $340.00); *Southern-Owners Ins. Co. v. Marquez*, No. 20-81431, 2022 WL 2651661, at *14 (S.D. Fla. July 8, 2022) (finding a $335.00 hourly rate appropriate for an attorney with roughly ten years of experience); *Davila v. Luxury Wood Floors Inc.*, No. 22-CV-80760, 2023 WL 8310975, at *2 (S.D. Fla. Sep. 29, 2023) (awarding a rate of $300 to an attorney with approximately five years of experience after the conclusion of a trial); *Gen. Star Nat'l Ins. Co. v. MDLV, LLC*, No. 1:21-CV-24284-MORENO/GOODMAN, 2024 WL 3994657, at *11 (S.D. Fla. Aug. 13, 2024), *report and recommendation adopted*, No. 21-24284-CIV, 2024 WL 3983994 (S.D. Fla. Aug. 28, 2024) (reducing attorney hourly rate to $300.00 based on three years of litigation experience in an insurance coverage case). Thus, accounting for counsel's experience, the nature of this insurance coverage case, and the fact that Defendants' own expert recommended a lower rate, the Court finds that a $350 rate for Ms. van de Berg and a $300 rate for Ms. David are reasonable.

## III. Number of Hours Reasonably Expended

1. <u>Allocation of Fees</u>

"Where ... 'a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others,

the trial court must evaluate the relationship between the claims' to determine the scope of the fee award." *Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299, 1306–07 (M.D. Fla. 2011) (quoting *Chodorow v. Moore*, 947 So.2d 577, 579 (Fla. 4th DCA 2007)). If "the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought [or were authorized]." *Id.* (quotation and internal quotation marks omitted) (alteration in *Chodorow*); *see also United States v. Jones*, 125 F.3d 1418, 1430 (11th Cir. 1997).

"[W]here a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'" *Durden*, 763 F.Supp. 2d at 1306 (citing *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So.2d 920, 922 (Fla. 3d DCA 1988)). "In contrast, time spent researching a 'discrete issue' as to a claim without a fee entitlement should not be included in a fee award." *Id.* at 1306–07. When the facts and claims are closely related, courts are not required to parse counsel's time. *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *4 (S.D. Fla. Aug. 7, 2017), *report and recommendation adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017).

Here, the Court finds the Defendants' legal theories and issues at the trial court level are related and do not require allocation. A review of the Court's Omnibus Order [DE 184] shows that the two main issues in this case were as follows: (1) whether Counter-Defendant Brown & Brown of Florida Inc. was an agent of Plaintiff; and (2) whether the 3985 Toyota was covered under the subject policy's after-acquired auto provision. *See* DE 184. Defendants did not prevail on the first issue but ultimately prevailed on the second. *See id.* Plaintiff would have the Court exclude all

time spent related to the first issue; however, Defendants raised both issues as an affirmative defense to Plaintiff's suit, and as a counterclaim arising "out of the same alleged acts or omissions with respect to the addition of the" vehicle at issue in this case. *See* DEs 41, 71, 74. "Florida courts have consistently held that the purpose of section 627.428 and its predecessor is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992). While Defendants did not know which theory would ultimately prevail, Defendants litigated each theory as they were "compelled to defend … their insurance contract[]." *Id.* If Plaintiff did not initiate this action, Defendants would not have had to present affirmative defenses and theories adverse to Plaintiff's complaint. *See Gulf Bldg., LLC v. Philadelphia Indem. Ins. Co.*, No. 22-CV-60573, 2024 WL 3293920, at *5 (S.D. Fla. June 11, 2024), *report and recommendation adopted*, No. 22-CV-60573-RAR, 2024 WL 3292630 (S.D. Fla. July 2, 2024). The Court will separately analyze whether the amount of time Defendants spent litigating this insurance coverage dispute was excessive, but the Court finds it improper to strike every time entry not related to the theory Defendants ultimately proved successful. Accordingly, the Court finds that it was reasonable for Defendants to expend time advancing defenses to their insurance contract.

On the other hand, the Court finds that time spent pursuing Defendants' cross-appeal was unreasonable. As stated, Defendants ultimately prevailed on the issue of whether Plaintiff had a duty to defend Defendants. [DE 184]. Plaintiff appealed because of the adverse ruling against it. Defendants were not compelled to file a cross-appeal. *See Gulf Bldg., LLC*, 2024 WL 3293920, at *5. Notably, Defendants' cross-appeal was dismissed for a lack of jurisdiction, and the agency issues were not the focus of the ultimate Eleventh Circuit decision. *See Prime Prop. & Cas. Ins.*

*Co. v. Kepali Group, Inc.*, 136 F.4th 1021 (11th Cir. 2025). Therefore, Defendants have not met their burden justifying why they did not allocate their fees. *22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 143–44 (Fla. 4th DCA 2015) ("The party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible.").

Because Defendants did not allocate their fees as to their unnecessary and unsuccessful cross-appeal, the Court shall do it for them. The Court finds that Defendants spent a total of 24.1 hours on time spent related to the cross-appeal and jurisdictional question from the Eleventh Circuit, split between 18.1 hours for Attorney van de Berg and 6 hours for Attorney Graham. [DE 219 at 76–77]. The Court takes this time from the entries dated December 8, 2023, through December 29, 2023, and 0.9 hours from an entry dated January 30, 2024. The Court will subtract this time below.

2. Remaining Objections

Lastly, Plaintiff objects to many of Defendants' time entries as excessive, duplicative, unnecessary internal conferences, clerical tasks, vague, and block-billed entries.

First, the billing logs do contain unnecessary or excessive hours. "Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2019 WL 4694147, at *4 (S.D. Fla. Aug. 27, 2019) (citing *Norman*, 836 F.2d at 1301). For example, as Plaintiff points out, Defendants spent 74 hours preparing an answer brief, 84 hours preparing for and attending a 15-minute oral argument, and 21 hours preparing a motion for appellate fees. [DE 219 at 52, 63]. While the Court appreciates Defendants' assertion that this case and appeal were complex, this case is still an insurance coverage case. Moreover, spending 176 hours, totaling over four 40-hour weeks, is more than a

reasonable paying client would accept for briefing an appeal and related cross-appeal and attending a 15-minute oral argument.

Further, records contain entries billing for fixing Defendants' noncompliance with court rules, for example when the Court struck Defendants' filings during the summary judgment stage [DEs 112, 128], or for collecting fees on fees when Plaintiff admitted that entitlement to fees was not in dispute.[6] *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993) (holding that fees incurred regarding entitlement are recoverable under section 627.428, but fees litigating the reasonable amount are not). Thus, a reduction is required due to the excessive and unnecessary billing entries.

Second, the billing logs are filled with a substantial number of entries involving multiple attorneys billing for the same task and internal conferences. The Eleventh Circuit recognizes that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)). To recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Barnes*, 168 F.3d at 423; *see also Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings.").

Here, duplicative billing is apparent from the billing records and Defendants' counsels'

[6] An example of billing entries recording these errors are found as dated April 4, 2023, through April 5, 2023, and on July 14, 2023, and July 21, 2023.

own total hours breakdown. For example, Attorney Graham spent a total of 67.60 hours for "brief writing" while Attorneys van de Berg and David billed 45.9 and 14 hours for the same, respectively. [DE 219 at 25–27]. Additionally, Attorney Graham spent 13.1 hours "obtaining and reviewing records" when Attorney van de Berg spent 49.7 hours, and Attorney David spent 23.6 hours for the same. *Id.* Similar patterns are seen with the total time each attorney billed for conducting legal research. *Id.* To name a few specific instances, multiple attorneys billed for analyzing the same or similar case law. *See id.* at 76–77. Thus, for time billed as pointed out above and for other similar entries, a reduction is warranted for duplicative billing.

Moreover, it was not reasonable for Defendants' counsel to continuously bill for internal conferences involving multiple attorneys. *See Korman v. Iglesias*, No. 18-21028-CV, 2019 WL 2142521, at *5 (S.D. Fla. Apr. 4, 2019), *report and recommendation adopted*, No. 18-21028-CIV, 2019 WL 2141655 (S.D. Fla. Apr. 25, 2019) ("We will also exclude from the fee award the time billed by both attorneys spent 'discussing' the case at hand."). In their Motion for Appellate Fees, Defendants simply state that billing for office conferences is reasonable, but they do not elaborate as to how billing a total of 32.8 hours, over four entire workdays, for "interviews and conferences" during the appeal was reasonable in this matter. [DE 219 at 25–27, 92–93]. Numerous internal conferences also plague Defendants' district court billing records. In fact, Defendants point out that they billed over 180 hours, over four entire workweeks, for internal conferences at the district court level. [DE 208 at 8–9; DE 208-6]. While the Court recognizes that Defendants' billing records mainly state what the topic of discussion was during internal conferences, Defendants ultimately do not justify such a large number of billing entries for continuous internal conferences. *See Barnes*, 168 F.3d at 432 (holding that "a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys

reflects the distinct contribution of each lawyer").

Third, the billing records evidence some instances of block billing. "Block billing is impermissible because it prevents the Court from determining which portion of the fees billed on a particular date is recoverable and which is not." *Winslow v. Indiheartandmind, Inc.*, No. 21-cv-80800, 2022 WL 426513, at *3 (S.D. Fla. Feb. 11, 2022). For example, on February 25, 2025, Attorney Graham billed 6.8 hours for "[u]pdate and shepardize case law to prepare for oral argument. Office conference with attorney van de Berg about potential significant issues to address at oral argument. Revise outline to focus on Reply Brief arguments that we did not file a response to." [DE 219 at 79]. Also, on February 26, 2025, Attorney Grahm billed 4.1 hours for "[r]eview file and review Judge Thoflat's [sic] record of interviews to prepare oral argument outline. Meet with Attorneys van de Berg and David to try to identify issues that may arise outside of briefed issues, and to discuss review and shepardize of cited authorities to prioritize work between attorneys." *Id.* at 80. Additionally, on March 20, 2023, Attorney van de Berg billed 7 hours to "[r]evise V. Bringa and E. Monroy affidavits to incorporate all references to exhibits and attach relevant exhibits, revise Statement of Facts to correct references to Exhibits as appendix; research and analyze cases on general lines agent appointment for summary judgment motion; revise summary judgment motion." [DE 229-1 at 60]. However, not all of Plaintiff's objections regarding block-billed entries are warranted. For instance, Plaintiff objects to an entry as block-billed that bills 2.5 hours for "[r]eview Order affirming judgment; begin researching appellate fee request requirements." [DE 219 at 82]. Even though the entry is technically block-billed, the Court can determine the reasonableness of entries such as this because "they describe only closely related compensable activities billed in small blocks of time[.]" *Otto v. City of Boca Raton, Fla.*, No. 24-10478, 2025 WL 2952783, at *5 (11th Cir. Oct. 20, 2025). Nonetheless, Defendants admit that a

10% reduction is warranted for block-billed time. [DE 208 at 8, 10; DE 219 at 94]. Thus, the Court will at least hold Defendants to their stipulation.

Fourth, it appears that some reduction is warranted for billing for clerical work. For example, on August 10, 2023, Attorney Graham billed for "[r]eview email from clerk re admission to 11th Circuit Court of Appeals and forward to Jahaisa for payment." [DE 219 at 75]. Also, on December 5, 2023, Attorney Graham billed in part for "have Jahaida repeatedly call Mr. Monroy with mediation information." *Id.* at 76. Time entries for clerical or administrative tasks should be excluded. *See Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *3 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, No. 19-CV-60108, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020), *appeal dismissed*, No. 21-10010-J, 2021 WL 1327212 (11th Cir. Feb. 5, 2021); *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them.") (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999)).

Despite the above findings, it appears that several of Plaintiff's objections to Defendants' time entries are meritless. For instance, Plaintiff objects to numerous entries as "vague." However, based on the Court's knowledge and experience, the Court finds that these objections are generally groundless. Further, the Court does not find that an almost 80% cut, as suggested by Plaintiff, is warranted. In fact, the Court believes that it would be an abuse of discretion to make such a large cut. However, based on the relevant factors, the time records, and a review of the docket and all the underlying facts, the Court does find that some reduction is warranted, as discussed below.

3. <u>Lodestar Amount</u>

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *1 (S.D. Fla. Oct. 20, 2017). However, "[a] district court 'must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage.'" *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022) (per curiam) (quoting *Heiar v. Crawford Cnty.*, 746 F.2d 1190, 1204 (7th Cir. 1984)). The court is required to "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc.* (*In re Home Depot*), 931 F.3d 1065, 1089 (11th Cir. 2019) (quotation marks omitted); *see also Smith v. Comm'r of Soc. Sec.*, No. 24-11233, 2025 WL 263388, at *2 (11th Cir. Jan. 22, 2025) (finding that the court abused its discretion in arbitrarily reducing the attorney's fees by 40% due to block billing).

Here, the Court finds that an across-the-board reduction in hours is appropriate in this case to account for the billing deficiencies identified above. In carefully considering the billing entries and objections, the Court finds a reduction to the lodestar by 30% total is warranted. This represents a studied evaluation by the Court of all the billing errors. It additionally represents a calculation which the Court believes is reasonable based upon the totality of the billing records and the errors observed by the Court. The Court has not picked this number randomly out of the air but rather has spent significant time attempting to arrive at a fair reduction after review of the voluminous billing entries. The table below illustrates the Court-determined rates and the Court-determined reasonable hours.

| | **Hourly Rate** | **Number of Hours** | **Total** |
|---|---|---|---|
| Keith A. Graham | $450 | 444.9 | $200,205 |
| Anne E. van den Berg | $350 | 774.8 | $271,180 |
| Valerie C. David | $300 | 89.5 | $26,850 |
| Marcos R. Marchena | $450 | 7.4 | $3,330 |

The total attorneys' fees award for Defendants is $501,565.00.

## IV. <u>COSTS</u>

Defendants seek $10,045.49 in taxable costs and $5,345.09 in non-taxable costs. [DE 225 at 14].

As an initial matter, the briefing lacks clarity. Defendants state that they "timely sought recovery of Kepali's District Court attorney fees of $516,277.92 and costs from Prime, (DE 187 and 199), *totaling $10,045.49 in the Motion to Tax costs, plus $5,345.09 for non-taxable Lexis research* itemized in Exhibits G-1 and G-2 to DE 199[.]" [DE 225 at 5] (emphasis added). Further, in their reply brief, Defendants reiterate that "Kepali seeks costs in the amount of $10,045.49 as set forth in Defendants [sic] Motion to Tax costs, plus $5,345.09[7] for non-taxable Lexis research. [Exhibits G-1 and G-2 to DE 199]." [DE 232 at 4]. However, Defendants' math does not add up. In Defendants' original motion to tax costs, which they now renew, they only sought $4,691.40, not $10,045.49, in taxable costs. [DEs 187 at 5, 187-1, 187-2]. Later, in Defendants' original motion for attorneys' fees and costs, they additionally sought $5,354.09 in non-taxable costs related to Lexis research costs. [DE 199 at 12]. $5,354.09 plus $4,691.4 equals $10,045.49.

[7] Defendants use $5,3**45**.09 as the amount they seek in Lexis research costs in their Motion for Fees and Costs. [DE 225]. However, in their prior motion for fees and costs, they sought $5,3**54**.09 in Lexis fees, which is the correct calculation based on Defendants' exhibits. [DEs 199 at 12, 199-9, 199-10]. For mathematical purposes, the Court utilizes the $5,354.09 figure but will hold Defendants to their lower cited amount below.

Therefore, without any evidence to the contrary, Defendants are seemingly double-adding their Lexis expenses, once in their taxable costs total and once as separate non-taxable costs. The Court does not appreciate having to identify and fix counsel's mathematical errors and expects that competent counsel can accurately identify the total costs they seek. Accordingly, the Court operates under the assumption that Defendants only seek $4,691.40 in taxable costs and $5,345.09[8] in non-taxable expenses. [DEs 187-2, 199-9, 199-10].

i. Taxable Costs

Federal Rule of Civil Procedure 54 states in part, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). For purposes of Rule 54(d)(1), a "prevailing party" is the party in whose favor judgment is rendered by the Court. *See Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002).

Here, Plaintiff does not challenge that Defendants are the prevailing parties and are entitled to seek taxable costs. [DE 229 at 7–9].

Next, 20 U.S.C. § 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Pursuant to § 1920, a judge or clerk of any court of the United States may tax costs regarding the following:

> (1) Fees of the Clerk and Marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

[8] The Court will not consider Defendants' previously sought higher amount of Lexis expenses when they cannot accurately cite the total amount now.

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Defendants first request $3,311.40 for fees for printed or electronically recorded transcripts necessarily obtained in this case and $1,380 for court reporter fees. [DE 187-2 at 1]. These costs related to deposition fees of Norman Morris, Richard Tuberville Bryant, Aimee McCue, Eric Alvarez, Christin Vick, Aaron Bunting, Erin Buck, Laurie Perkins, and Ana Pereira. [DE 229 at 8; DE 187-2]. Plaintiff argues that Defendants did not necessarily "incur these costs in prevailing in this case." [DE 229 at 8]. Plaintiff further avers that "[t]he depositions in this case were only necessary to pursue Kepali's own affirmative counterclaims concerning agency and reformation, and Prime prevailed on each of those claims[.]" *Id.* at 9.

The Eleventh Circuit has held that costs for deposition transcripts are generally taxable as long as the transcripts were "necessarily obtained for use in the case." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620–21 (11th Cir. 2000). In determining the necessity of a deposition, it must only appear to have been reasonably necessary at the time it was taken. *Id.* Additionally, "[b]ecause the parties presumably have equal knowledge of the basis for each deposition," the party who challenges the proposed costs "bears the burden of showing that specific deposition costs or a court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition." *George v. Fla. Dep't of Corr.*, No. 07-80019-CIV, 2008 WL 2571348, at *5 (S.D. Fla. May 23, 2008). Such is the case "unless the knowledge necessary for the court to make a determination regarding the propriety of the proposed costs rests within the exclusive knowledge of the prevailing party." *Id.* at *2. Attendance fees of

the court reporter are also permissible taxable costs. *DuChateau v. Camp Dresser & McKee, Inc.*, No. 10-60712-CIV, 2012 WL 1069166, at *2 (S.D. Fla. Mar. 29, 2012).

Here, Plaintiff misstates the governing standard. The Court is not bound to only award costs related to successful claims. "While [Plaintiff] argues that the use of these depositions was minimal or that they were not critical to [Defendants'] ultimate success, [Plaintiff] has not demonstrated that any portion of the depositions was not related to an issue which was present in the case at the time the deposition was taken." *U.S. E.E.O.C.*, 213 F.3d at 621. In fact, all of the above-mentioned deponents, except for Aaron Bunting, were included on Plaintiff's witness list, and all deponents were included on the various parties' witness lists. [DE 183 at 29–31]; *U.S. E.E.O.C.*, 213 F.3d at 621 ("We have upheld the taxation of a deposition where the losing party listed the deponent on its witness list."). Moreover, as stated, attendance fees for a court reporter are recoverable. *DuChateau*, 2012 WL 1069166, at *2.

Accordingly, Defendants are entitled to $4,691.40 in taxable costs for deposition and transcript fees.

ii. <u>Non-Taxable Costs</u>

Second, Defendants seek $5,345.09 in non-taxable Lexis research expenses. *See* DE 225 at 14; DE 199 at 12. Plaintiff does not specifically object to the Lexis research expenses. *See* DEs 207, 229 at 7–9. However, "[t]he Court has discretion to determine whether the cost of online legal research should be recoverable." *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *7 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted*, No. 14-CIV-20786, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015); *Golf Clubs Away v. Hostway Corp.*, 2012 WL 2912709, *6 (S.D. Fla. July 16, 2012). Here, Defendants do not elaborate on the reasonableness or necessity of their requested research costs, thereby failing to "establish any link between the legal research"

and the claims at issue here. *H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1286 (S.D. Fla. 2019). Therefore, Defendants fail to meet their burden in showing that these costs should be awarded. *See Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335 (S.D. Fla. 2000) (reiterating that the movant "still bears the burden of submitting a request for expenses that would enable the Court to determine what expenses were incurred and whether [the movant] is entitled to them").

## V. CONCLUSION

In light of the foregoing, the Undersigned **RECOMMENDS** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** the Motions [DEs 219, 225]. Specifically, the Undersigned **RECOMMENDS** that the District Judge award Defendants' attorneys' fees in the amount of $501,565 and taxable costs in the amount of $4,691.40, for a total award of $506,256.40, and enter a judgment against Plaintiff for such amount, applying the appropriate statutory interest.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach County, Florida, this 24th day of July 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge